# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ABRAHAM SHITRAI ISRAEL and
SARAH IRIS ISRAEL,

                    Plaintiffs,

          v.                                                    5:25-CV-248
                                                                (BKS/MJK)

BARBARA GUINN, *et al.*[1]

                    Defendants.

---

ABRAHAM SHITRAI ISRAEL and
SARAH IRIS ISRAEL, Plaintiffs, *pro se*

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE BRENDA K. SANNES, CHIEF U.S. DISTRICT JUDGE:

## ORDER and REPORT-RECOMMENDATION

Plaintiffs commenced this action on February 26, 2025, by filing a complaint.

("Compl.," Dkt. 1). Plaintiffs also filed motions for leave to proceed *in forma pauperis*

("IFP"). (Dkts. 2, 3). The Clerk has sent the complaint and the IFP motions to this Court

for review.

---

[1] While page 2 of the complaint lists the State of New York, County of Onondaga and the Town of Dewitt as parties to this action, Plaintiffs clarify that the intended Defendants are: (a) Barbara Guinn, individually and in her official capacity as Commissioner of the New York State of Temporary Disability Assistance; (b) Brandy Schremp, individually and in her official capacity as IM Specialist for the Onondaga County Department of Social Services; (c) Susan Puthuparamil, individually and in her official capacity as Emergency Worker for the Onondaga County Department of Social Services; (d) Tyneisha Gray, individually and in their official capacity as SNAP/Emergency Assistance Worker for the Onondaga County Department of Social Services; (e) Stacy Wickes, individually and in her official capacity as a police officer for the Town of Dewitt; and (f) Lucas Byron, individually and in his official capacity as a police officer for the Town of Dewitt.

1

## I. <u>IFP Applications</u>

Plaintiffs declare in their IFP applications that they are unable to pay the filing fee. (Dkts. 2, 3). After reviewing Plaintiffs' applications, this Court finds that they are financially eligible for IFP status.

In addition to determining whether a plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii). Courts shall dismiss a case, at any time, if they determine that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *Id.*

When determining whether an action is frivolous, a court must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also* 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process and discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). But courts must

still determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Id.* (finding that a district court may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

Additionally, Fed. R. Civ. P. 8(a)(2) requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

The Court will now consider Plaintiffs' complaint under the above standards.

II.    **Complaint**

On or about October 17, 2024, the basement of Plaintiffs' home flooded, and the City of Syracuse shut off their water. (Compl., ¶ 9). On November 5, 2024, Plaintiffs were granted temporary emergency assistance by the Onondaga County Department of Social Services. (*Id.*). Defendant Gray approved temporary housing assistance for Plaintiffs at the Econo Lodge Hotel in Dewitt, New York from November 5, 2024 through December 5, 2024. (*Id*). On November 15, 2024, Plaintiffs allege that they "were both gang assaulted at the front door of their hotel accommodation by other tenants under the same custodial care of Onondaga County DSS." (Compl., ¶ 10). Plaintiff Abraham Shitrai Israel was "cut with a razor in his face and suffered protracted disfigurement, head contusions, lacerations to his upper lip, and permanent head and back injuries." (*Id.*). Plaintiff Sarah Iris Israel allegedly suffered a "fractured wrist and swollen ligaments." (*Id.*). The complaint alleges that Defendants Wickes and Byron deprived Plaintiffs "of emergency medical assistance, crime victim assistance, and illegally ejected [them] from their temporary shelter accommodation provided by the Onondaga County DSS." (*Id.*). Plaintiffs also allege that they went to a local hospital on their own without "transport by medical technicians," were "denied the right to seek prosecution," and "were forced to go back to their primary residence without any food or water in inclement weather conditions." (*Id.*). Finally, Plaintiffs allege that Defendants Gary, Schremp, and Puthuparamil denied Plaintiff Sarah Iris Israel "adult protective services and [M]edicaid services." (Compl., ¶ 17).

Plausibly construed, Plaintiffs' claims arise from their request for emergency housing and funds to repair their home. (*See* Compl., *generally*). The complaint[2] alleges six claims stemming from alleged violations of Plaintiffs' rights under the Eighth and Fourteenth Amendments, the Fair Housing Act (42 U.S.C. § 3601 *et seq.*), 42 U.S.C. § 1983, the New York State Constitution, and an array of New York State statutes and regulations. Plaintiffs seek monetary damages.

## III. <u>Exhaustion</u>

### A. Legal Standard

In New York, "an Article 78 proceeding is a perfectly adequate post deprivation remedy. . ." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996). Where a plaintiff alleges that they were deprived of a protected interest due to a random, unauthorized act by a state employee, that claim must be pursued through an Article 78 proceeding before resorting to federal court. *See Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 39 n. 2 (2d Cir. 2013).

In contrast, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post deprivation procedures will not, ipso facto, satisfy due process." *Hellenic Am. Neighborhood Action Comm.*,101 F.3d at 880; *see also Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990) ("[T]he existence of independent state relief does not defeat a Section 1983 claim where

---

[2] The complaint contains a myriad of irrelevant references and discussions. Rule 8(d)(1) requires each allegation to be "simple, concise and direct." Plaintiffs' complaint is exactly the opposite. If Plaintiffs are permitted to amend, they should be directed to comply with Rule 8 and focus their allegations on their legal claims.

the deprivation complained of results from the operation of established state procedures."). "[W]here the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies," and "[a]though plaintiffs could bring their individual claims in state court under Article 78, they are not required to do so." *Van Oss v. New York*, 783 F. Supp. 2d 681, 695 (S.D.N.Y. 2011); *see also Corbley v. Cty. of Suffolk*, 45 F. Supp. 3d 276, 281-82 (E.D.N.Y. 2014) (plaintiff not required to pursue an article 78 proceeding as the alleged procedural due process violations are systemic as opposed to random); *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014) ("[B]ecause the Plaintiff here . . . alleges that the Defendant's procedural due process violations are systematic as opposed to random, the Court finds that the Plaintiff was not required to first initiate an Article 78 proceeding before commencing this action.").

## B. Analysis

On October 17, 2024, the New York State Office of Temporary and Disability Assistance ("Agency") denied Plaintiffs' application for emergency assistance for home repairs. (Dkt. 1-1, at 16). On October 24, 2024, Plaintiffs requested a fair hearing. (*Id.*). On December 16, 2024, the hearing officer issued a Decision After Fair Hearing ("Decision"), affirming the denial of Plaintiffs' application for emergency funds to make repairs to their home. (Dkt. 1-1, at 15-21). The transmittal letter enclosing the Decision advised Plaintiffs, among other things, of their right to commence an action under Article 78 of the Civil Practice Law and Rules within four months of the date of same. (Dkt. 1-1, at 11).

There are no allegations in the complaint demonstrating that Plaintiffs availed themselves of the remedies afforded by Article 78. And, there are no allegations in the complaint plausibly suggesting that any purported deprivation of a protected interest is a systemic problem such that their obligation to pursue an Article 78 proceeding in the first instance can be excused. *See Van Oss* 783 F. Supp. 2d at 695. The complaint merely alleges that the Decision was the product of "negligence" (Dkt. 1, at ¶ 17) which, to the Court, suggests that the hearing officer simply "got it wrong."

To the extent Plaintiffs did not commence an Article 78 proceeding regarding the denial of their application for emergency repair funds, their time to do so has lapsed and they are  precluded from asserting claims in this action for the same relief. However, because the complaint is disjointed, the Court cannot discern which of Plaintiffs' claims, if any, seek damages arising from the denial of their application for emergency funds to repair their home, or whether they seek remedies separate and apart from the relief denied in the Decision. Accordingly, the Court recommends that the complaint be dismissed without prejudice and with leave to amend to afford Plaintiffs the opportunity to delineate with specificity, to the extent possible, what relief they are seeking under the statutes and regulations they reference and the factual allegations to support those specific claims.

## IV.    **Defendants Guinn, Schremp, Puthuparamil, and Gary**

Even if Plaintiffs fully exhausted their Article 78 remedies,  the Court recommends that their claims against Defendants Guinn, Schremp, Puthuparamil, and Gary, to the extent they arise under § 1983, nevertheless be dismissed with prejudice

and without leave to amend. "Neither the United States Constitution nor any other federal law establishes a fundamental right to public housing or emergency shelter." *Mallgren v. John Doe Corp.*, No. 13-CV-1265, 2013 WL 1873319, at \*4 (E.D.N.Y. May 2, 2013). Further, "a plaintiff cannot assert claims under Section 1983 for the deprivation of rights guaranteed by the [Fair Housing Act], ADA or the Rehabilitation Act" because the "FHA contains a comprehensive enforcement mechanism for the rights cited by the Plaintiffs under [42 U.S.C.] § 3604." *Sinisgallo v. Town of Islip Hous. Auth.* 865 F.Supp.2d 307, 333-34 (E.D.N.Y. 2012) (citations omitted). Plaintiffs are therefore prohibited from utilizing § 1983 as a conduit to seek relief otherwise available to them under the Fair Housing Act, ADA or the Rehabilitation Act.

Plaintiffs' claims under the Fair Housing Act, which prohibits discrimination in the sale, rental, and financing of dwellings due to race, color, religion, sex, or national origin, also fail. *See* 42 U.S.C. § 3604(a). The statute is unclear whether an emergency shelter qualifies as a "dwelling" under the Fair Housing Act or if Plaintiffs are considered renters. Even if Plaintiffs establish that they fall within the scope of the statute, the complaint is nevertheless devoid of any allegations that any of the Defendants "ma[d]e unavailable or den[ied] a dwelling" to them because of their "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). However, since Plaintiffs are proceeding *pro se*, it is recommended that their Fair Housing Act claims  be dismissed without prejudice and with leave to amend. *See Wilmer v. Albany Cnty. Soc. Servs.,* No. 1:16-CV-905 (NAM/CFH), 2016 U.S. Dist. LEXIS 97394

(N.D.N.Y. Jul. 25, 2016), *report recommendation adopted*, 2016 U.S. Dist. LEXIS 108814 (Aug. 17, 2016).

## V.    Defendants Wickes and Brown

Liberally construed, Plaintiffs' fifth claim asserted against Defendants Wickes and Brown, Town of Dewitt Police Officers, alleges violations of the Eighth and Fourteenth Amendments, as well as the Fair Housing Act. Regardless of the Article 78 exhaustion issue, the Court recommends that Plaintiffs' Eighth Amendment, Fair Housing Act, and Fourteenth Amendment claims all be dismissed as to Defendants Wickes and Brown with prejudice and without leave to amend.

To the extent the complaint alleges an Eighth Amendment claim, it is meritless because its protections only apply to individuals convicted of a crime, which Plaintiffs are not. *See Felix v. City of New York*, 23-CV-5411, 2025 WL 754148, at *3 (E.D.N.Y. Mar. 10, 2025).

Plaintiffs' claim against Defendants Wickes and Brown arising under the Fair Housing Act is also without merit. Their alleged actions do not fall within the scope of the prohibitions contemplated by the Fair Housing Act. Therefore, even in the absence of the Article 78 exhaustion issue, Plaintiffs' claim against Defendants Wickes and Brown under the Fair Housing Act should be dismissed with prejudice and without leave to amend because of futility.

9

Plaintiffs' Fourteenth Amendment claim against Defendants Wickes and Brown for allegedly not treating Plaintiffs' alleged injuries or allowing them to press charges against their assailants also warrants dismissal with prejudice and without leave to amend regardless of the exhaustion issue. It is important to note that the complaint lacks any specificity as to whether Plaintiffs are claiming violations of their procedural due process rights, substantive due process rights, or both. Procedural due process concerns whether a plaintiff was afforded "appropriate notice and an opportunity be heard," while substantive due process "circumscribes an outer limit on permissible governmental action." *Mason v. Vill. of Babylon*, 124 F. Supp. 2d 807, 814 (E.D.N.Y. 2000). Notably, the complaint does not allege a particular process that Defendants Wickes and Brown should have afforded Plaintiffs that was disregarded. Similarly, the complaint does not plausibly allege a viable substantive due process claim under the Fourteenth Amendment against them. "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). The Court therefore recommends that Plaintiffs' Fourteenth Amendment claim against Defendant Wickes and Brown be dismissed with prejudice and without leave to amend.

## VI.   **Supplemental Jurisdiction**

Under 28 U.S.C. § 1367(a), "district courts shall have supplemental jurisdiction" over state-law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Having recommended that the complaint be dismissed, it is also recommended that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, which should be dismissed without prejudice and with leave to amend except as to Plaintiffs' claims under the New York State Constitution which is recommended to be dismissed without prejudice and without leave to amend. *See Biswas v. City of New York*, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013) ("Actions for damages at common law and under § 1983 are both considered adequate alternative remedies that preclude the assertion of a claim for damages under the state Constitution.") (citations omitted).

## VII.  <u>Opportunity To Amend</u>

Generally, before the court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the Court recommends that: (a) the complaint be dismissed without prejudice and with leave to amend to afford Plaintiffs the opportunity to delineate with specificity, to the extent possible, what specific relief they are seeking under the statutes and regulations they have referenced and the factual allegations to support those specific claims; (b) regardless of the Article 78 exhaustion issue, Plaintiffs' claims against Defendants Guinn, Schremp, Puthuparamil, and Gary, to the extent they arise under § 1983, be dismissed with prejudice and without leave to amend; (c) regardless of the Article 78 exhaustion issue, Plaintiffs' Fair Housing Act claims against Defendants Guinn, Schremp, Puthuparamil, and Gary be dismissed without prejudice and with leave to amend; (d) regardless of the Article 78 exhaustion issue, Plaintiffs' Eighth Amendment, Fair Housing Act, and Fourteenth Amendment claims against Defendants Wickes and Brown be dismissed with prejudice and without leave to amend; (e) Plaintiffs' claims under New York State law be dismissed without prejudice

and with leave to amend except as to Plaintiffs' claims under the New York State Constitution which should be dismissed without prejudice and without leave to amend.

If the District Court permits this action to proceed and Plaintiffs amend their pleading, they are reminded of their obligations under Fed. R. Civ. P. 8 which requires that their complaint contain a short and plain statement showing that they are entitled to relief. While the amended pleading should contain sufficient facts to provide Defendants with notice of the claims against them, it should not be a rambling dissertation of material that is not germane to their claims and should not include what they have labeled as a memorandum of law.

**WHEREFORE**, based on the findings above, it is

**ORDERED,** that Plaintiffs' applications to proceed *in forma pauperis* (Dkts. 2, 3) are granted, and it is further

**RECOMMENDED**, that the complaint be **DISMISSED** in its entirety **WITHOUT PREJUDICE**  and with leave to amend to afford Plaintiffs the opportunity to delineate with specificity, to the extent possible, what relief they are seeking under the statutes they have referenced and the factual allegations to support those specific claims, and it is further

**RECOMMENDED**, that regardless of the Article 78 exhaustion issue, the complaint, to the extent it asserts claims against Defendants Guinn, Schremp, Puthuparamil, and Gary that arise under § 1983, be **DISMISSED** in its entirety **WITH PREJUDICE** and without leave to amend as to, and it is further

13

**RECOMMENDED**, that regardless of the Article 78 exhaustion issue, Plaintiffs' Fair Housing Act claims against Defendants Guinn, Schremp, Puthuparamil, and Gary be **DISMISSED WITHOUT PREJUDICE** and with leave to amend, and it is further

**RECOMMENDED**, that regardless of the Article 78 exhaustion issue, Plaintiffs' Eighth Amendment claim against Defendants Wickes and Brown  be **DISMISSED WITH PREJUDICE** and without leave to amend, and it is further

**RECOMMENDED**, regardless of the Article 78 exhaustion issue, Plaintiffs' Fourteenth Amendment claim against Defendants Wickes and Brown be **DISMISSED WITH PREJUDICE** and without leave to amend, and it is further

**RECOMMENDED**, regardless of the Article 78 exhaustion issue, Plaintiffs' claim against Defendants Wickes and Brown under the Fair Housing Act be **DISMISSED WITH PREJUDICE** and without leave to amend, and it is further

**RECOMMENDED**, that Plaintiffs' claims under New York State law be **DISMISSED WITHOUT PREJUDICE** and with leave to amend except as to Plaintiffs' claims under the New York State Constitution which should be **DISMISSED WITHOUTPREJUDICE** and without leave to amend, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail,[3] and it is further

---

[3] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**ORDERED,** that while Plaintiffs may file objections to this Order and Report-Recommendation, before Plaintiffs submit any amended pleading, they should wait for the District Court to rule on the above Orders and Recommendations.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: May 15, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional
Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff,
pro se.

**AMENDED DECISION AND ORDER** [1]

[1]    On October 20, 2016, the Court issued a Decision
and Order upon initial review of plaintiff's
complaint. Dkt. No. 4. This Amended Decision
and Order is issued to correct clerical errors in the
Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

 **\*1**  The Clerk has sent to the Court for review a civil rights
action filed by pro se plaintiff Eddie Houston. Dkt. No. 1
("Compl."). Plaintiff has not paid the statutory filing fee for
this action and seeks leave to proceed in forma pauperis. Dkt.
No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged." *Cash v. Bernstein*, No.
09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26,
2010). Upon review of plaintiff's IFP Application, the Court
finds that plaintiff has demonstrated sufficient economic
need and filed the inmate authorization form required in the
Northern District of New York. Plaintiff's IFP application
(Dkt. No. 2) is granted. [2]

[2]    Section 1915(g) prohibits a prisoner from
proceeding in forma pauperis where, absent a
showing of "imminent danger of serious physical
injury," a prisoner has filed three or more actions
or appeals that were subsequently dismissed as
frivolous, malicious, or failing to state a claim
upon which relief may be granted. *See* 28
U.S.C. § 1915(g). Based upon the Court's review
of plaintiff's litigation history on the Federal
Judiciary's Public Access to Court Electronic
Records ("PACER") Service, it does not appear that
plaintiff has accumulated three strikes for purposes
of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for
commencing this action in forma pauperis, and because
plaintiff seeks relief from an officer or employee of a
governmental entity, the Court must consider the sufficiency
of the allegations set forth in the complaint in light of 28
U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of
the United States Code directs that, when a plaintiff seeks to
proceed in forma pauperis, "the court shall dismiss the case at
any time if the court determines that – ... (B) the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B). [3]

[3]    To determine whether an action is frivolous, a court
must look to see whether the complaint "lacks an
arguable basis either in law or in fact." *Neitzke v.
Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review
any "complaint in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of a
governmental entity" and must "identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if the
complaint ... is frivolous, malicious, or fails to state a claim
upon which relief may be granted; or ... seeks monetary relief
from a defendant who is immune from such relief." 28 U.S.C.
§ 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d
Cir. 1999) (per curiam) (noting that Section 1915A applies to
all actions brought by prisoners against government officials
even when plaintiff paid the filing fee).

 **\*2**  Additionally, when reviewing a complaint, the Court may
also look to the Federal Rules of Civil Procedure. Rule 8 of

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 5:25-cv-00248-BKS-MJK    Document 6    Filed 05/15/25    Page 17 of 48

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]    Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5] The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6] The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7] The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately

indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at *2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Case 5:25-cv-00248-BKS-MJK   Document 6   Filed 05/15/25   Page 19 of 48

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to

whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, *Motrin*, and refused *Ibuprofen*. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a *Section 1983*

Houston v. Colleran, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes,* 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988).

**\*7** It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf,* 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.,* 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart,* No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.

Case 5:25-cv-00248-BKS-MJK   Document 6   Filed 05/15/25   Page 22 of 48
Houston v. Collerian, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8** In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at **4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at *9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Case 5:25-cv-00248-BKS-MJK    Document 6    Filed 05/15/25    Page 23 of 48

Houston v. Collerran, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

---

[9]    The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. Where the plaintiff is confined for "an intermediate duration – between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[10]

---

[10]    The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short – less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 5:25-cv-00248-BKS-MJK    Document 6    Filed 05/15/25    Page 24 of 48

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Case 5:25-cv-00248-BKS-MJK    Document 6    Filed 05/15/25    Page 25 of 48

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York,* 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 5:25-cv-00248-BKS-MJK    Document 6    Filed 05/15/25    Page 26 of 48
Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]    If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:16-CV-01009**<br>Houston v. Collman et al | — | N.D.N.Y. | Aug. 15, 2016 | Docket |

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1873319
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Anthony Brian MALLGREN, Plaintiff,
v.
JOHN DOE CORPORATION, Defendant.

No. 13–CV–1265 (MKB).
|
May 2, 2013.

**Attorneys and Law Firms**

Anthony Brian Mallgren, Harlem, NY, pro se.

***MEMORANDUM & ORDER***

MARGO K. BRODIE, District Judge.

**\*1** On March 6, 2013, Plaintiff Anthony Brian Mallgren filed the above-captioned *pro se* action against Defendant "John Doe Corporation," alleging that he was falsely arrested while sitting in Defendant's lobby. The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The Complaint is dismissed for failure to state a claim upon which relief can be granted. Plaintiff is warned that the future filing of vexatious and frivolous litigation may result in sanctions, including limitations on filing.

**I. Background**

According to the Complaint, Plaintiff was approached by a hotel employee in the lobby of an unidentified hotel in Seattle, Washington sometime in May, 2012, and asked to open his eyes. (Compl., Statement of Claim, ¶¶ 1–2, 10.) Plaintiff describes an ensuing discussion about his business in the hotel and the employee's civic duty and education level. (*Id.* ¶¶ 5, 7.) When the employee suggested calling the police, "Mallgren responded that that would be great." (*Id.* ¶ 6.) Plaintiff alleges that "Mallgren was grabbed by the arm and escorted down to a security office" and that the employee said that he would "knock the f-k out of Mallgren." (*Id.* ¶ 7.) Plaintiff states that when the Seattle Police arrived, the officers initially refused to remove their sunglasses until after they had escorted him off of the premises. (*Id.* ¶ 8.) Plaintiff alleges that the officers said they would let him go with a

verbal warning and stated, "Please do not go back to the property for a while." (*Id.* ¶ 9.)

Plaintiff alleges that this incident subsequently "appeared in a background check for a position that Mallgren was applying for." (*Id.* ¶ 10.) He states that he contacted the court and was told that "the prosecuting attorney thought they then had enough evidence to prosecute Mallgren for the alleged crime." (*Id.*) Plaintiff has not indicated whether or not he was prosecuted for this incident.

Plaintiff alleges that he was "fals[e]ly accused, arrested and detained without good cause" and that he "suffered the effects of defamation, fraudulent inducement, a violation of maintaining his stance and opinion of a single employee of the defendant and the ability of speaking this through body language to the rest of the people in view." (Compl., Injury.) He seeks unspecified damages and "removal of state proceedings" from Washington State "to federal jurisdiction." (Compl., Relief.)

Plaintiff has filed six civil actions in this Court between January 23, 2013 and March 16, 2013. The first action, *Mallgren v. Louis Vuitton North America, Inc. et al.,* No. 13 Civ. 416, was transferred to the United States District Court for the Central District of California, which court dismissed the case. No. 13 Civ. 706, slip op. (C.D.Cal. Feb. 12, 2013) (denying leave to file without the prepayment of fees pursuant to 28 U.S.C. § 1915(e)(2) (B)). Plaintiff's second action was dismissed in part, and Plaintiff was granted leave to amend his claim for false arrest related to prior incidents in New York City. *Mallgren v. New York City,* No. 13 Civ. 724, 2013 WL 816236 (E.D.N.Y. March 4, 2013). Plaintiff did not file an amended complaint. Instead, Plaintiff filed a notice of appeal to the Court of Appeals for the Second Circuit, where the appeal remains pending. Two other subsequent actions are also now dismissed by this Court, and another remains pending. *See Mallgren v. Motion Recruitment Partners Inc., et al.,* No. 13 Civ. 1054 (dismissed for lack of subject matter jurisdiction); *Mallgren v. Bloomberg, et al.,* No. 13 Civ. 1466 (dismissed as frivolous and for failure to state a claim); *Mallgren v. Metropolitan Transportation Authority,* No. 13 Civ. 986 (pending).

**\*2** Plaintiff has also filed multiple actions in the United States District Court for the Southern District of New York. *See Mallgren v. New York State Supreme Court,* No. 12 Civ. 7240, slip op. (S.D.N.Y. Nov. 13, 2012) (dismissed for lack of subject matter jurisdiction, for failure to state a claim upon

Case 5:25-cv-00248-BKS-MJK    Document 6    Filed 05/15/25    Page 31 of 48
**Mallgren v. John Doe Corp., Not Reported in F.Supp.2d (2013)**

2013 WL 1873319

which relief may be granted, and because the defendant is immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)); *Mallgren v. New York State Supreme Court, et al.,* No. 12 Civ. 7404, 2013 WL 586857 (S.D.N.Y. Feb.11, 2013) (dismissed for failure to comply with filing requirements); *Mallgren v. Intellectual Ventures,* No. 12 Civ. 7447, slip op. (S.D.N.Y. Nov. 7, 2012) (dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)); *Mallgren v. Microsoft, et al.,* No. 12 Civ. 7517 (S.D.N.Y.) (pending); *Mallgren v. New York Hospital,* No. 13 Civ. 1763 (pending).

On March 20, 2013, Plaintiff filed a "Motion for Emergency Injunctive Relief" in this and three other cases before this Court. The Motions, identical in each case, save for the docket number, seek:

> injunction [ *sic* ]relief, either for the staying of all effected [ *sic* ] proceedings (in New York State Courts, United States Courts of the Southern and Eastern District of New York and the Second Circuit of Appeals), the concerted transfer of jurisdiction/venue and leave to execute all current and future proceedings with original jurisdiction here, in the United States District Courts of Washington and the Ninth Circuit of Appeals, as well as an order allowing Mallgren, upon the wish of Mallgren, to return to the New York City shelter system ..., with the option of future use of the benefits provided by Project Reconnect.

(Docket Entry No. 4 ("Mot. for Emer. Inj. Relief").) *See also Mallgren v. New York City,* No. 13 Civ. 724, Docket Entry No. 27 ("Motion for Emer. Inj. Relief"); *Mallgren v. Motion Recruitment Partners Inc., et al.,* No. 13 Civ. 1054, Docket Entry No. 4 ("Motion for Emer. Inj. Relief"); *Mallgren v. Metropolitan Transportation Authority,* No. 13 Civ. 986, Docket Entry No. 4 ("Mot. for Emer. Inj. Relief").

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotation marks omitted); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (noting that even after *Twombly,* the court "remain[s] obligated to construe *apro se* complaint liberally"). Nevertheless, the court is required to dismiss *sua sponte* an IFP action, if the court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007).

**\*3** A plaintiff seeking to bring a lawsuit in federal court must establish that the Court has subject matter jurisdiction over the action. *See, e.g., Rene v. Citibank NA,* 32 F.Supp.2d 539, 541–42 (E.D.N.Y.1999) (inquiring into whether *pro se* plaintiff established subject matter jurisdiction); *see also Chestnut v. Wells Fargo Bank, N.A.,* No. 11 Civ. 5369, 2012 WL 1657362, at *3 (E.D.N.Y. May 7, 2012) ("Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking."). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700–01 (2d Cir.2000) (citations omitted). Federal subject matter jurisdiction is available only when a "federal question" is presented, or when plaintiffs and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1331 and § 1332. In order to invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### b. Failure to State a Claim

Plaintiff's Complaint is frivolous and fails to state a claim. The only factual allegations involve Plaintiff's discussion with a private security guard and Seattle police officers and his eventual ouster from the lobby of a private hotel located in Seattle. Plaintiff's claims for "defamation" and "fraudulent inducement" do not invoke any federal question. His allegations about a "violation of maintaining his stance" and "the ability of speaking ... through body language" are nonsensical and frivolous. (Compl., Injury.) His request for "removal of state proceedings" to federal court suggests no basis for removing a pending state criminal case to federal court. [1]

[1]    Moreover, even if Plaintiff had a civil case that could be removed from state court to federal court, it would require removal to the United States District Court for the Western District of Washington.

To the extent that Plaintiff invokes false arrest, a possible Fourth Amendment claim which may be cognizable under 42 U.S.C. § 1983, Plaintiff has failed to name a proper defendant. In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.* As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quotations omitted). The only named defendant, "John Doe Corporation," appears to refer to the unspecified hotel from which he was escorted. Plaintiff has not named any individual defendant "acting under color of state law" who could be held liable under § 1983. Accordingly, the Complaint fails to state a claim on which relief may be granted and is therefore dismissed.

### c. Motion for Emergency Injunctive Relief

**\*4** Plaintiff's March 20, 2013 motion seeking emergency injunctive relief is denied for lack of jurisdiction and failure to state a claim. The motion explains Plaintiff's indecision about remaining in New York City or departing for Spokane, Washington, asks this Court to stay or transfer all of Plaintiff's pending litigation in this and other courts, and seeks an order providing future access to emergency housing and other

benefits from the New York City Department of Homeless Services. (Docket Entry No. 4 ("Mot. for Emer. Inj. Relief").)

Plaintiff's request for a stay or transfer of all pending litigation is denied. Plaintiff has presented no grounds to stay the instant Complaint while he decides where to reside. The underlying Complaint is hereby dismissed for failure to state a claim. No change of venue will transform the Complaint into a viable civil action. Accordingly, the request for a stay of this action is denied. This Court does not have jurisdiction over Plaintiff's complaints in the New York State courts, in other federal district courts, or in the Court of Appeals. Any requests for a stay of those cases must be directed to the appropriate courts.

Plaintiff's request for an order allowing him access to emergency housing and Project Reconnect benefits is denied for failure to state a claim. Neither the United States Constitution nor any other federal law establishes a fundamental right to public housing or emergency shelter. *See, e.g., Lindsey v. Normet,* 405 U.S. 56, 74, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (finding no "constitutional guarantee of access to dwellings of a particular quality"); *Acevedo v. Nassau County, New York,* 500 F.2d 1078, 1080–1081 (2d Cir.1974) (finding no constitutional duty to provide low income housing); *Fair Hous. In Huntington Comm. v. Town of Huntington, NY,* No. 02 Civ. 2787, 2005 WL 675838, at \*8 (E.D.N.Y. Mar. 23, 2005) ("Unfortunately for Plaintiffs, there is no constitutional or statutory duty to provide low income housing, nor is there a constitutional guarantee of access to dwellings of a particular quality." (quoting *Acevedo,* 500 F.2d at 1080–81) (internal quotation marks omitted)), *on reconsideration in part,* 2005 WL 3184273 (E.D.N.Y. Nov.29, 2005). Plaintiff has not alleged that he faces discrimination or disparate treatment that could serve as the basis for a claim that could be cognizable under the Civil Rights Act, 42 U.S.C. § 1983, or the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* Accordingly, his request for a guarantee of future housing to be provided by the City of New York fails to state a claim upon which relief may be granted.

### d. Frequent Frivolous Litigation

Of the six cases Plaintiff has filed in this Court between January 23, 2013 and March 16,

2013, three have now been dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) or for lack of subject matter jurisdiction. The federal courts have limited resources. Frequent frivolous filings work to diminish the ability

of the courts to manage their dockets for the efficient administration of justice. "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh,* 229 F.3d 121, 123 (2d Cir.2000) (internal quotations and citations omitted). Plaintiff is warned that the future filing of vexatious and frivolous litigation may result in sanctions, including the imposition of an injunction prohibiting him from making future filings seeking *in forma pauperis* status without leave of the Court. *See In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) ("With respect to civil litigation, courts have recognized that the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints."); *see also Amaker v. Haponik,* 125 F. App'x 375, 376 (2d Cir.2005) (warning plaintiff that "filing of frivolous appeals ... may result in the imposition of leave-to-file sanctions," as "[s]uch a measure is appropriately applied to those litigants who have a 'clear pattern of abusing the litigation process by filing vexatious and frivolous complaints' " (quoting *In re Sassower,* 20 F.3d at 44)); *In re Knows,* No. 12 Civ.1908, 2012 WL 2923317, at \*2 (E.D.N.Y. July 18, 2012) (putting plaintiff "on notice that any future filing of vexatious or frivolous complaints with the court may lead the court to impose an injunction prohibiting her from filing a complaint without the court's prior authorization" (citing *In re Sassower,* 20 F.3d at 44)).

### III. Conclusion

**\*5** The allegations contained in the Complaint are frivolous and fail to state a claim on which relief may be granted. Accordingly, the Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's "Motion for Emergency Injunctive Relief" is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 1873319

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.  Docket 1:13cv01265**<br>MALLGREN v. JOHN DOE CORPORATION | — | E.D.N.Y. | Mar. 06, 2013 | Docket |

**WESTLAW**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (1)**

**Direct History (1)**

1.  Mallgren v. John Doe Corp.
    2013 WL 1873319 , E.D.N.Y. , May 02, 2013 , appeal dismissed (2nd Circ. 13-1807) ( Jul 24, 2013 )

2025 WL 754148
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Gloria FELIX as Administrator of the Estate of
Migdalia Ortega, and Gloria Felix, Individually
and on behalf of all Distributees, Plaintiff,

v.

The CITY OF NEW YORK, The New York City Police
Department, The Fire Department of New York, Police
Officers "John Doe I-X" (whose names are fictitious,
and identities are not currently known) and First
Responders "John Doe I-X" (whose names are fictitious,
and identities are not currently known), Defendants.

23-CV-5411 (EK)(VMS)
|
Signed March 10, 2025

**Attorneys and Law Firms**

Lambros Y. Lambrou, The Lambrou Law Firm P.C., New
York, NY, for Plaintiff.

Andrew J. Orenstein, Harris Beach Murtha Cullina PLLC,
New York, NY, Glenn Michael Jones, New York, NY, Marina
O'Keeffe, New York City Law Department, New York, NY,
Daniel Scott Hallak, Harris Beach Murtha Cullina PLLC,
Uniondale, NY, for Defendant The City of New York.

Daniel Scott Hallak, Harris Beach Murtha Cullina PLLC,
Uniondale, NY, Glenn Michael Jones, New York, NY, for
Defendants The New York City Police Department, The Fire
Department of New York, Police Officers "John Doe I-X".

**MEMORANDUM & ORDER**

ERIC KOMITEE, United States District Judge:

**\*1** Plaintiff Gloria Felix brings this action as administrator
of the estate of her deceased sister, Migdalia Ortega. Felix
alleges that Defendants — the City of New York, the New
York Police Department, the Fire Department of New York,
and various John Doe officers — failed to provide Ortega with
adequate medical care after her boyfriend shot her. Ortega
eventually died at the hospital.

Felix's amended complaint asserts federal constitutional
claims under 42 U.S.C. § 1983 for violations of the Fourth,
Eighth, and Fourteenth Amendments. It also asserts state-
law claims for negligence and wrongful death. Defendants
now move to dismiss the federal claims under Federal Rule
of Civil Procedure 12(b)(6). For the reasons set out below,
Defendants' motion is granted.

**I. Background**

The following facts are drawn from the amended complaint,
and they are presumed true for the purposes of this motion.
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). [1]

[1]   Unless otherwise noted, when quoting judicial
decisions this order accepts all alterations and
omits all citations, footnotes, and internal quotation
marks.

On the night of May 9, 2022, Migdalia Ortega's boyfriend
shot her in an apartment in Queens. Am. Compl. ¶¶ 18-19,
ECF No. 18. Defendants "were informed by 911 calls and /
or individuals at the scene" that Ortega had been shot, was
"critically injured," and required "life-saving medical care."
*Id.* at ¶ 23. Upon arrival, Defendants "seized control and / or
custody" of the apartment and began searching for gunshot
victims. *Id.* at ¶¶ 20-22.

Defendants "unreasonabl[y] delayed in ascertaining
[Ortega's] location [within the apartment]," and therefore did
not treat her promptly. *Id.* at ¶ 24. Ortega died at Elmhurst
Hospital Center from her wounds — wounds that allegedly
would have been "survivable if timely medical care [had
been] rendered." *Id.* at ¶ 25.

**II. Legal Standard**

To survive a motion under Rule 12(b)(6), a complaint must
contain "sufficient factual matter, accepted as true, to state
a claim to relief that is plausible on its face." *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009). However, the requirement
to accept a complaint's allegations as true "is inapplicable
to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, [will] not suffice." *Id.*

## III. Discussion

### A. Federal Section 1983 Claims (Count III)

1. Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The complaint alleges that Defendants violated Ortega's Fourth Amendment rights when they entered the apartment without a warrant and "seized control" of the premises. Am. Compl. ¶ 21.

The complaint does not allege an unreasonable search or seizure. To be reasonable under the Fourth Amendment, "a search of a home must either be conducted pursuant to a warrant or meet an exception to the warrant requirement." Anthony v. City of N.Y., 339 F.3d 129, 135 (2d Cir. 2003). One such exception is the emergency aid exception, which permits an officer to "enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998). To determine if the exception applies, "the core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action." United States v. Simmons, 661 F.3d 151, 157 (2d Cir. 2011). The plaintiff has the burden to establish the exception's applicability, though this is not dispositive here.[2]

[2]    The Second Circuit held, in Ruggerio v. Krzeminski, that a civil plaintiff asserting a Fourth Amendment violation bears the burden of showing that no exception to the warrant requirement applies. 928 F.2d 558, 563 (2d Cir. 1991). The circuits are split on this question and, as Judge Weinstein noted relatively recently, the Second Circuit has not consistently assigned the burden for every warrant exception. See Thompson v. Clark, 364 F. Supp. 3d 178, 191-92 (E.D.N.Y. 2019). In any event, the burden will not be dispositive where, as here, the complaint alleges facts clearly supporting the exception's application. See Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 382-83 (S.D.N.Y. 2013), vacated in part, Chamberlain Est. of Chamberlain v. City of White Plains, 960 F.3d 100, 106-110 (2d Cir. 2020).

**\*2** The complaint, on its face, alleges facts supporting application of the emergency aid exception. See Hausch v. Ecklond, 604 F. App'x 59, 60 (2d Cir. 2015) (summary order) (affirming district court's dismissal of Fourth Amendment claim after finding that complaint and public record supported invocation of "special needs" exception); Chamberlain, 986 F. Supp. 2d at 382-83 (dismissing Fourth Amendment claim because "facts as alleged by Plaintiff ma[de] clear that the officers' entrance into the apartment" fell under the emergency aid exception). According to the complaint, Defendants entered the apartment after 911 callers and individuals at the scene informed them that Ortega "was critically injured within [the apartment] and in desperate need of life-saving medical care." Am. Compl. ¶ 21-23. So, even read in the light most favorable to Felix, the complaint alleges facts that would lead a "reasonable" and "experienced" officer to conclude that Ortega required emergency assistance. Felix thus has not plausibly alleged that Defendants' entry into the apartment violated the Fourth Amendment.

The complaint also does not allege an unreasonable search or seizure of Ortega herself. Indeed, it alleges only that Defendants "seiz[ed] control" of the *apartment*, not of Ortega's person. Id. at ¶ 21. Felix argues that if Defendants seized control of the apartment, then it is reasonable to infer that they also seized Ortega. Pl.'s Opp'n Mem. 4, ECF No. 25 ("[Ortega] was effectively seized during the course of the criminal investigation into the shooting ... [via] the seizure of the premises in which [she] was trapped"). This does not follow. Generally, the government "seizes" a person under the Fourth Amendment when "a reasonable person would [not] feel free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 436 (1991). The complaint never alleges facts suggesting that Ortega reasonably felt — by virtue of Defendants' conduct, rather than her own injuries — that she could not leave the apartment. See Bostick, 501 U.S. at 436 (seizure analysis does not consider whether person's freedom of movement was "restricted by a factor independent of police conduct"); see also Michigan v. Chesternut, 486 U.S. 567, 576 (1988) (Scalia, J., concurring) ("A Fourth Amendment seizure occurs when an individual remains in the control of law enforcement officials because he reasonably believes, on the basis of their conduct toward him, that he is not free to go."). Thus, the complaint does not allege a cognizable seizure of Ortega's person.

### 2. Fourteenth Amendment (Due Process)

Felix also brings a claim under the Due Process Clause of the Fourteenth Amendment. Specifically, she alleges that by "unreasonably delay[ing]" treatment of Ortega's wounds, Defendants violated her due process rights. Am. Compl. ¶¶ 24, 34. We construe this as a substantive, not procedural, due process claim. [3]

[3]     The complaint alleges a violation of Ortega's "due process rights," without further specificity. Am. Compl. ¶ 34. "Due process has both a procedural and substantive component." *Mason v. Vill. of Babylon*, 124 F. Supp. 2d 807, 814 (E.D.N.Y. 2000). Procedural due process concerns whether the plaintiff was afforded "appropriate notice and an opportunity be heard," while substantive due process "circumscribes an outer limit on permissible governmental action." *Id.* But the complaint never alleges a particular process that Ortega should have received. Moreover, in her briefing, Felix argues that she has stated a claim for deliberate medical indifference, Pl.'s Opp'n Mem. 5-6, which sounds in substantive due process, *see Charles v. Orange Cnty.*, 925 F.3d 73, 85-86 (2d Cir. 2019).

The complaint does not state a viable due process claim under the Fourteenth Amendment. "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). And even assuming, *arguendo*, that Defendants negligently treated Ortega's wounds, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

**\*3** Felix argues that state officials can be liable for damages under the Due Process Clause when they are deliberately indifferent to the medical needs of a pretrial detainee. Pl.'s Opp'n Mem. 6; *see generally Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 395 (S.D.N.Y. 2020) (outlining the standard for such claims). But Ortega was not a pretrial detainee. As noted above, Ortega had not been "seized" within the meaning of the Fourth Amendment, *supra* at Part III.A.1, let alone incarcerated (or otherwise detained)

ahead of trial. Thus, Felix's substantive due process claim also lacks merit.

### 3. Fourteenth Amendment (Equal Protection)

The complaint states, in passing, that Defendants' conduct violated Ortega's rights under the Equal Protection Clause of the Fourteenth Amendment. Am. Compl. ¶ 34. Because the complaint does not allege Ortega's membership in a particular class or group, the Court construes this as a "class of one" claim. *See Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (defining "class of one" claims).

A "class of one" equal protection claim requires a plaintiff to show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* Here, the complaint does not allege the existence of any "similarly situated" comparator to Ortega. Accordingly, the complaint does not state a viable "class of one" claim under the Equal Protection Clause.

### 4. Eighth Amendment

The complaint goes on to allege (again in passing) that Defendants' conduct violated the Eighth Amendment's ban on cruel and unusual punishment. Am. Compl. ¶ 34. The Eighth Amendment's protections only apply to convicted prisoners. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Ortega was not a convicted prisoner. So, Felix cannot bring an Eighth Amendment claim here. [4]

[4]     Felix's invocation of the Eighth Amendment may relate to her deliberate medical indifference claim under the Fourteenth Amendment. When state officials are deliberately indifferent to the medical needs of convicted prisoners, their actions violate the Eighth Amendment as incorporated against the states by the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976). But Felix claims — inaccurately — that Ortega was a pretrial detainee, not a convicted prisoner. Pl.'s Opp'n Mem. 6. And claims of deliberate medical indifference against pretrial detainees "are governed by the Due Process Clause of the Fourteenth Amendment," not by the Eighth Amendment. *Darnell*, 849 F.3d at 29.

### 5. *Monell* Claim

Felix also alleges that the City is liable for the above-discussed alleged constitutional violations of its employees. Am. Compl. ¶ 35. To establish municipal liability for the allegedly unconstitutional acts of city employees under 42 U.S.C. § 1983, a plaintiff must show that the "action alleged to be unconstitutional implements or executes" official municipal policy, or that it stems from a "governmental custom even though such a custom has not received formal approval through the [municipality's] official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978).

There can be no *Monell* liability "[u]nless a plaintiff shows that [she] has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Because Felix has failed to plausibly allege that Defendants violated Ortega's legal rights, her *Monell* claims against the City must fail.

**\*4** But even if Felix had adequately alleged an individual employee's violation, she still has not plausibly alleged that the challenged conduct stemmed from official City policy or unofficial City custom. The complaint offers little more than the conclusory assertion that the City inadequately trained and monitored its employees. Am. Compl. ¶ 35. It alleges no facts buttressing this conclusion. These kinds of "threadbare" conclusions are not enough to pass muster under Rule 12(b)

(6). *Iqbal*, 556 U.S. at 678; *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Accordingly, Felix's claims against the City must be dismissed.

**B. State Law Claims (Counts I, II, and IV)**

Because there are no federal claims remaining, the Court will decline supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Indeed, this is the "usual" course when all federal claims have been dismissed at the pleading stage. *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013). These claims are dismissed without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988).

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss the federal claims is granted in full. The Court declines supplemental jurisdiction over the state-law claims.

SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 754148

---

**End of Document**                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:23-CV-05411**<br>Felix et al v. The City of New York et al | — | E.D.N.Y. | July 17, 2023 | Docket |

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.



**User Name:** Chaim Jaffe
**Date and Time:** Thursday, May 15, 2025 8:53□AM EDT
**Job Number:** 252928248

## Documents (2)

1. *Wilmer v. Albany Cnty Soc. Servs., 2016 U.S. Dist. LEXIS 97394*
   **Client/Matter:** -None-
   **Search Terms:**
   **Search Type:**
2. *Wilmer v. Albany County Soc. Servs., 2016 U.S. Dist. LEXIS 108814*
   **Client/Matter:** -None-
   **Search Terms:**
   **Search Type:**

◆ Positive
As of: May 15, 2025 12:53 PM Z

## *Wilmer v. Albany Cnty Soc. Servs.*

United States District Court for the Northern District of New York

July 25, 2016, Decided; July 25, 2016, Filed

No. 1:16-CV-905 (NAM/CFH)

**Reporter**

2016 U.S. Dist. LEXIS 97394 *

SHARON WILMER, Plaintiff, v. ALBANY COUNTY SOCIAL SERVICES, Defendant.

**Subsequent History:** Adopted by, Dismissed without prejudice by *Wilmer v. Albany County Soc. Servs., 2016 U.S. Dist. LEXIS 108814 (N.D.N.Y, Aug. 17, 2016)*

**Counsel:** [*1] Sharon Wilmer, Plaintiff, Pro se, Albany, New York.

**Judges:** Christian F. Hummel, United States Magistrate Judge.

**Opinion by:** Christian F. Hummel

## Opinion

### REPORT-RECOMMENDATION AND ORDER

Plaintiff pro se Sharon Wilmer commenced this action on July 22, 2016 with the filing of a complaint and a motion to proceed in forma pauperis ("IFP"). Dkt. Nos. 1, 2. Upon review of plaintiff's IFP application, the undersigned concludes that she may properly proceed IFP.[1] See Dkt. No. 2.

A. **Initial Review**

*Section 1915(e) of Title 28 of the United States Code* directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *28 U.S.C. § 1915(e)(2)(B)*. Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. As plaintiff is representing himself, the court is to consider his claims [*2] "liberally" and "interpret them 'to raise the strongest arguments that they suggest.'" *Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286* (quoting *Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006))*.

### 1. Plaintiff's Claims

Plaintiff argues that defendant Albany County Department of Social Services (hereafter "DSS")[2] discriminated against her on the basis of her gender in violation of *Title VII of the Civil Rights Act of 1964*. Dkt. No. 1 at 2. Although she does not explicitly argue as such, it is arguable that plaintiff is also attempting to contend that she was discriminated against due to her race. Id. at 3. Plaintiff provides that she brings this claim

---

[1] Plaintiff is advised that, although her IFP application has been granted, she will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[2] Plaintiff has named as defendant Albany County Social Services; however, the undersigned takes judicial notice that the proper name is Albany County Department of Social Services. However, at this time, the caption will reflect plaintiff's designation.

pursuant to "*42 U.S.C. Section 1981a*" and "42 U.S.C. 1998." Dkt. No. 1 at 4-5. Plaintiff contends that on July 17, 2016, she filed an application for emergency shelter through DSS. Id. Plaintiff contends that she completed all necessary steps in order to qualify for emergency shelter. Id. at 3. Liberally construed, plaintiff appears to contend that certain employees at DSS refused her emergency shelter, falsely contending that she did not comply with her prior living arrangement. Id. at 3. Plaintiff also appears to argue that certain DSS employees, throughout the application process, made humiliating comments toward plaintiff, insofar as they commented "that as an educated Black Woman that she [*3] should get a job and further humiliation why she should not return to Albany to be Homeless . . . ." Id.

It appears that, at some point, plaintiff filed a "Hastes Request for Emergency Housing and was placed by the After Hour Shelter Assisting Shelter Placement at Ramada Inn Hotel." Dkt. No. 1 at 3. Plaintiff returned to DSS on July 18, 2016, "as instructed by Hates Housing for Shelter." Id.[3] Plaintiff provides that, on her return to DSS, certain employees "continue[d] to make racial and gender discrimination about her daughter and further told SW she did not stay at the Ramada Inn Hotel and was Triple Team [sic] against Plaintiff by Several Social Worker [sic] as she comply [sic] proof that she did in deed [sic] stay at the Ramada Inn by providing her key to room 705." Id. at 3. Plaintiff next argues that the social workers "plotted together a scheme saying Plaintiff was on the do not admit list shelter and was referred to unsafe housing at Schenectady County [*4] Booth home in which was pts. [sic] Danger for safety and wellbeing [sic]." Id. Plaintiff provides that she filed a "fair hearing complaint" on July 19, and was placed at the Mercy House. Dkt. No. 1 at 3. Plaintiff believes

that the Mercy House placement contradicts the DSS workers' claims that she was on a do not admit shelter list. Id.

Plaintiff contends that defendant DSS "has engaged in a patter of gender discrimination and other violation of Plaintiff Sharon Wilmer Human Right to Safe Housing" despite the fact that she "provide[d] evidence and compliance with her request for safe housing." Dkt. No. 1 at 4. She contends that she was "grossly harassed and denied housing." Id. She further argues that, as a result of DSS's conduct, she has suffered from emotional distress, chest pains, stress, depression, racing heart, and high blood pressure, and demands compensatory and punitive damages. Id. at 4-5.

## 2. Analysis

Plaintiff appears to argue that she was discriminated against [*5] on the basis of her gender and race insofar as she was initially denied[4] emergency housing by defendant DSS. See generally Dkt. No. 1. As evidence of apparent racial and gender discrimination, it appears that plaintiff is alleging that defendants fabricated a claim that plaintiff did not comply with her prior housing placement at the Ramada Inn Hotel, despite the fact that plaintiff offered evidence of compliance. Id. Further, plaintiff indicates that DSS employees made comments that plaintiff is an "educated Black woman" who should find a job and should not return to Albany to be homeless. Id.

Plaintiff purports to bring this claim pursuant to "*42 U.S.C. § 2000e et Seq*. (Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1993." Dkt. No. 1 at 2. It appears that plaintiff may be intending to refer to *42 U.S.C. § 2000e et. seq.* It is well settled that Title VII is a statute pursuant to which individuals sue to recovery from discrimination in employment. See *42 U.S.C. § 2000e-2* ("It shall be an unlawful employment

---

[3] In referencing "Hates" and "Hastes," it is possible that plaintiff intends to refer to HATAS - The Homeless and Travelers Aid Society, which provides, among other things, emergency housing assistance. See *http://.hatas.org/About.php* (last visited July 25, 2016).

[4] Although difficult to discern, it appears plaintiff eventually received emergency housing through DSS. See Dkt. No. 1 at 4.

practice for an *employer* — (1) to fail or refuse to hire or to discharge any individual, **[\*6]** or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, or national origin.") (emphasis added).[5] As plaintiff was not an employee of defendant, and her claims do not arise out of workplace discrimination, she cannot bring a claim against DSS pursuant to Title VII.

Giving plaintiff due solicitude, she may wish to pursue a claim against DSS for discrimination in public services, which would be pursuant to Title VI, *42 U.S.C. § 2000d*. Title VI of the Civil Rights Act of 1964 provides that no person may, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *42 U.S.C. § 2000d*. Plaintiff, however, has not stated facts from which one can infer any discriminatory intent or motivation with respect to race on the part of defendant. See *Yusuf v. Vassar Coll., 35 F.3d 709, 712-14 (2d Cir.1994)* ("A plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions."). Although plaintiff makes general comments that defendant, through its employees,

discriminated against her because of her race and gender, the only specific comment plaintiff states in support her claim that she was discriminated against on the basis of race is that a DSS employee told her that she was an "educated Black Woman" who should find a job and not be homeless. Dkt. No. 1 at 3. However, this statement, even when construed as liberally as possible, does not suggest **[\*8]** discrimination on the basis of race. See *Roggenbach v. Touro College of Osteopathic Medicine., 7 F. Supp. 3d 338, 347 (S.D.N.Y. 2014)* ("A single comment — even if offensive — is not sufficient to uphold a Title VI claim on its own.") (citation omitted). Plaintiff also states, without providing details to support this claim, that defendant DSS employees "continue to make racial and gender discrimination about her daughter" when plaintiff returned to DSS on July 18, 2016. Id. However, plaintiff's daughter is not a named plaintiff herein, and, further, plaintiff offers no evidence detailing the alleged racial discrimination against her. Even assuming, as we must, that it is true that plaintiff was denied emergency housing, despite being eligible and not on a "do not place" list, plaintiff still does not plead sufficient facts to demonstrate that the initial denial of emergency housing was based on intentional discrimination due to her race in order to plead, even at this early stage, a sufficient violation under Title VI.

Insofar as plaintiff contends that she was discriminated against on the basis of her gender, Title VI does not protect against gender discrimination. However, as plaintiff is entitled to special solicitude, the Court will assess whether plaintiff may be able **[\*9]** to set forth a claim under *Title VIII of the Civil Rights Act of 1968*, the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988. *42 U.S.C. § 3601, et seq.* The FHA prohibits discrimination in the sale, rental, and financing of dwellings due to race, color, religion, sex, or national origin. *42 U.S.C. § 3604(a)* ("[I]t shall be unlawful . . . to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status,

---

[5] Plaintiff further contends that this Court has jurisdiction pursuant to *28 U.S.C. §§ 1331, 1343*. Dkt. No. 1. at 2. *Section 1331* provides for federal question jurisdiction and *section 1343* provides that district courts have original jurisdiction over actions alleging civil rights violations. As plaintiff sets forth a claim of violation of rights purportedly secured by a federal statute, plaintiff has established federal question jurisdiction. See *City of Kenosha, Wisconsin v. Bruno, 412 U.S. 507, 512, 93 S. Ct. 2222, 37 L. Ed. 2d 109 (1973)* (providing that a federal court is obligated to notice on its own motion to basis for its jurisdiction). **[\*7]**

or national origin."). First, it is unclear if emergency shelter would be a "dwelling" under the FHA or if plaintiff would be considered a "renter" within the FHA's terms. However, even if plaintiff is able to demonstrate that she falls within these definitions such that she can properly bring her claim for gender discrimination under the FHA, plaintiff has presented no evidence that DSS "ma[d]e unavailable or den[ied] a dwelling" to plaintiff due to plaintiff's gender or race. *42 U.S.C. § 3604(a)*. As indicated above, the only example plaintiff provided of DSS employees even mentioning her race or gender was an employee's comment that she was an educated Black Woman" who should find a job and not be homeless. Dkt. No. 1 at 3. Plaintiff makes conclusory allegations that defendant **[*10]** employees "grossly harass[ed]" her, defendants "continue[d] to make racial and gender discrimination about her daughter," and "engaged in a pattern of gender discrimination and other violation [sic]." Dkt. No. 1 at 3-5. However, plaintiff sets forth no evidence that DSS's denial of emergency housing was motivated or caused by discriminatory animus as to plaintiff's race or gender. See, e.g., *Mitchell v. Shane, 350 F.3d 39, 49* ("The plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendants' challenged actions were motivated by discrimination . . . .").

As bald allegations of discrimination on the basis of race or gender, without specific evidence to support that the initial denial of emergency housing was motivated by, or caused by, plaintiff's race or gender, plaintiff's Title VI and arguable Fair Housing Act claims must be dismissed. Plaintiff pleads nothing that would "give plausible support to [eve] a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015)*. However, as plaintiff is proceeding pro se, it is recommended that the dismissal be without prejudice and that plaintiff be afforded an opportunity to amend her complaint.[6]

As a final note, plaintiff demands punitive damages. It is well-settled that Title VI only permits recovery of compensatory damages, not for punitive damages. *Barnes v. Gorman, 536 U.S. 181, 187-88, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002)*. Accordingly, it is recommended that plaintiff's claim for punitive damages — insofar as it can be read that she is seeking such damages in connection with a Title VI claim — be dismissed with prejudice.[7]

## III. Conclusion

For the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED** in its entirety pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii)* for failure to state a claim upon which relief can be granted; and it is further

**RECOMMENDED**, that plaintiff's claim for punitive damages, insofar as she requests such damages in connection with a Title VI, be

---

[6] Plaintiff has unsuccessfully brought similar actions in the past. In 2013, **[*11]** plaintiff, along with her daughter, brought an action against DSS in 2013 setting forth, among other things, Title VI claims relating in part to housing. See *Robinson v. Social Service, 13-CV-172 (NAM/CFH), 2013 U.S. Dist. LEXIS 37392, 2013 WL 1122450 (N.D.N.Y. Feb. 22, 2013)*. That case was dismissed with prejudice after plaintiff failed to amend her complaint, pursuant to the Court's decision and order See *Robinson v. Social Service, 13-CV-172 (NAM/CFH), 2013 U.S. Dist. LEXIS 37392, 2013 WL 1122450 (N.D.N.Y. Feb. 22, 2013)*, Dkt, Nos. 5, 7. Plaintiff also brought an action alleging discrimination against Cedar Park Apartments which also appeared to be based, in part, on housing difficulties and discrimination. Wilmer v. Cedar Park Apartments, 1:13-CV-167 (TJM/RFT), Dkt. Nos. 5, 8, 10. That case was dismissed with prejudice after the Court determined that it did not have subject matter jurisdiction and plaintiff failed to amend her complaint to demonstrate otherwise. See id.

[7] Insofar **[*12]** as plaintiff's complaint may be read as setting forth a claim for gender and race discrimination in violation of the Fair Housing Act, a claim for punitive damages under such statute need not be dismissed, as the FHA expressly allows for recovery of punitive damages. *United States v. Space Hunters, Inc., 429 F.3d 416, 427 (2d Cir. 2005)*. Accordingly, the recommendation to dismiss plaintiff's claim for punitive damages is limited to her Title VI claim.

dismissed with prejudice; and it is further

**RECOMMENDED**, that, in light of plaintiff's pro se status, the remainder of plaintiff's complaint be **dismissed without prejudice**, to afford plaintiff an opportunity to amend her complaint[8] to set forth violations of Title VI and the Fair Housing Act and provide sufficient details as to how she was intentionally discriminated against **[*13]** due to her gender and race in violation of such statutes; and it is further

**RECOMMENDED**, that plaintiff be provided **thirty (30) days** from the date of the filing of the Decision and Order adopting this Report-Recommendation and Order to file an amended complaint; and it is further

**RECOMMENDED**, that, if plaintiff fails to file an amended complaint within **thirty (30) days [*14]** from the date of the filing of the Decision and Order adopting this Report-Recommendation and Order, the Clerk of the Court shall enter judgment dismissing this action without further order of the Court; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

Pursuant to *28 U.S.C. § 636(b)(1)*, the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT**

**WITHIN FOURTEEN (14)** *DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)* (citing *Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989))*; see also *28 U.S.C. § 636(b)(1)*; *Fed. R. Civ. P. 72* & *6(a)*.

**IT IS SO ORDERED**.

Dated: July 25, 2016

Albany, New York

/s/ Christian F. Hummel

Christian F. Hummel

U.S. Magistrate Judge

---

**End of Document**

---

[8] Should the District Judge adopt this Report-Recommendation and order granting plaintiff an opportunity to amend her complaint, the following guidance is offered. Any amended complaint that may be filed will supersede and replace completely the first complaint filed by plaintiff. The amended complaint must contain a caption that clearly identifies the party being sued and mut contain the case number assigned to this action. Plaintiff must clearly state the nature of the suit, the basis for this jurisdiction, and specific details as to how defendants' alleged behavior amounted to discrimination on the basis of plaintiff's gender or race. Further, in compliance with the Federal Rules, the body of any amended complaint must contain sequentially numbered paragraphs which each discuss only one act of misconduct per paragraph.

 Neutral
As of: May 15, 2025 12:53 PM Z

# *Wilmer v. Albany County Soc. Servs.*

United States District Court for the Northern District of New York

August 17, 2016, Decided; August 17, 2016, Filed

1:16-CV-00905 (NAM/CFH)

**Reporter**
2016 U.S. Dist. LEXIS 108814 *

SHARON WILMER, Plaintiff, vs. ALBANY COUNTY SOCIAL SERVICES, Defendant.

**Prior History:** *Wilmer v. Albany Cnty Soc. Servs., 2016 U.S. Dist. LEXIS 97394 (N.D.N.Y, July 25, 2016)*

**Counsel:** [*1] Sharon Wilmer, Plaintiff, Pro se.

**Judges:** Norman A. Mordue, Senior United States District Judge.

**Opinion by:** Norman A. Mordue

## Opinion

### ORDER

The above matter comes to me following a Report-Recommendation by Magistrate Judge Christian F. Hummel, duly filed on the 25th day of July 2016. Following fourteen days from the service[1] thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's Report-Recommendation, and no objections having been submitted thereto, it is hereby

ORDERED that the Report-Recommendation (Dkt. No. 4) is accepted in its entirety, and it is further

ORDERED that the Plaintiff's entire Complaint is dismissed pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii)* for failing to state a claim upon which relief can be granted unless, the plaintiff files an Amended Complaint consistent with the Report-Recommendation on or before September 19, 2016, and it is further

ORDERED that in the event an Amended Complaint is not filed, the Clerk of the Court enter [*2] judgment and close this action on September 19, 2016 and it is further

ORDERED that the Clerk of the Court shall serve a copy of this order upon plaintiff by regular and certified mail to the address on court's docket and the address listed on civil cover sheet as plaintiff listed two addresses.

IT IS SO ORDERED.

Date: August 17, 2016

/s/ Norman A. Mordue

Norman A. Mordue

Senior U.S. District Court Judge

---

**End of Document**

---

[1] The Report-Recommendation was mailed by certified mail to plaintiff two addresses as instructed in the Report-Recommendation, both were returned as undeliverable as "unclaimed".